*Dana T. Johnson, Jr. v. State of Maryland*, No. 9, September Term, 2019. Opinion by Getty, J.

**CRIMINAL LAW—SENTENCING—CONTROLLED DANGEROUS SUBSTANCES—VOLUME POSSESSION**

The Court of Appeals held that Maryland Code ("Md. Code") (1957, 2012 Repl. Vol., 2019 Supp.), Criminal Law ("CR") § 5-612 unambiguously provides the penalty for a violation of the same by stating the mandatory minimum term of imprisonment. Further, informed by the legislative history of Article 27, § 286 and CR § 5-612, the Court held that the maximum allowable term of imprisonment under CR § 5-612 is twenty years.

Circuit Court for Baltimore County
Case No. 03-K-17-001060
Argued: September 10, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2019

_____

DANA T. JOHNSON, JR.

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald,
Watts,
Hotten,
Getty,
Booth,
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Getty, J.
Booth, J. concurs.
Watts, J. dissents.

_____

Filed: February 28, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Petitioner Dana Terrell Johnson, Jr. was convicted of volume possession of a controlled dangerous substance under Maryland Code ("Md. Code") (1957, 2012 Repl. Vol., 2019 Supp.), Criminal Law ("CR") § 5-612 in the Circuit Court for Baltimore County. Mr. Johnson received a total sentence of fourteen years' imprisonment, the first five without the possibility of parole. Mr. Johnson now contends that his sentence is illegal because the express language of CR § 5-612 fails to state a maximum potential term of imprisonment.

The General Assembly clearly established the maximum term of imprisonment for felony possession of a Schedule I narcotic drug when Article 27, § 286 was originally enacted in 1970: "[a]ny person who violates [Article 27, § 286(a)] with respect to[ a Schedule I narcotic drug] shall, upon conviction, be deemed guilty of a felony and sentenced to a term of imprisonment for not more than twenty (20) years." Article 27, § 286(b)(1) (1970).[1] This maximum penalty provision in the broader penalty scheme remained unchanged through several amendments to Article 27, § 286, the recodification of the Criminal Law Article, and CR § 5-612. Until 2005, CR § 5-612 indicated that the maximum penalty associated with volume possession of a Schedule I narcotic drug was twenty years' imprisonment. Senate Bill 429 of the 2005 Legislative Session, a well-intentioned bill passed to conform certain criminal laws with recent Supreme Court decisions, had the unintended effect of severing the mandatory minimum penalty in CR

---

[1] As originally enacted, Article 27, § 286(b)(1) created a felony offense for, inter alia, possession of a Schedule I or II narcotic drug with the intent to distribute. The following provision, Article 27, § 287, contained a misdemeanor crime often referred to as "simple possession," which is not at issue in this case.

§ 5-612 from the base penalty for possession of a narcotic drug in CR § 5-608.

For the reasons that follow, we conclude that CR § 5-612 is unambiguous and Mr. Johnson's sentence is not illegal because the maximum term of imprisonment under CR § 5-612 is, and has always been, twenty years. Accordingly, we shall affirm the judgment of the Court of Special Appeals.

## BACKGROUND

Baltimore County Police Department Officers Evan Vicarini and Bryan Trussell patrolled the streets of Woodlawn, Baltimore County, Maryland on a rainy February morning in 2017. The officers observed a silver Acura with abnormally dark, tinted windows. The window tint entirely obscured the officers' line of sight into the vehicle, leading Officer Trussell to believe the level of tint exceeded the permissible amount allowable under Maryland law. A Motor Vehicle Administration record check revealed that the registered owner of the Acura did not possess a Maryland driver's license. The officers activated their patrol car's emergency equipment to stop the vehicle. The driver of the Acura, later identified as Petitioner Dana Johnson ("Mr. Johnson"), initially complied. As the officers exited their patrol car and approached the vehicle, Mr. Johnson sped away. The officers pursued Mr. Johnson as he crossed into oncoming traffic and failed to stop at a red traffic light. However, treacherous roadways and poor weather conditions increased the danger to the public and forced the officers to abandon the chase.

Officers Vicarini and Trussell deactivated their patrol car's emergency equipment, resumed normal driving speeds and proceeded in the same direction where they last saw the Acura flee. At the next intersection, the officers spotted the Acura stopped at a red

2

light. This time, the officers pulled up behind the Acura without activating any emergency equipment. Mr. Johnson again drove away. The officers trailed the Acura at a distance without breaking any traffic laws. From approximately one-half mile behind the vehicle, the officers watched as the Acura ran another red light and collided with another vehicle. The officers approached the crash scene and attended to Mr. Johnson and the other driver. Baltimore County Fire and Rescue arrived on scene, extracted Mr. Johnson from the Acura and transported him to Sinai Hospital of Baltimore ("Sinai Hospital").

Baltimore County Police Department Officer Sean Daley accompanied Mr. Johnson to the trauma unit of Sinai Hospital. While tending to Mr. Johnson, Sinai Hospital employees removed Mr. Johnson's clothes and placed them on the hospital bed. Officer Daley concurrently searched each article of clothing. Officer Daley discovered a large plastic bag of off-white powder in Mr. Johnson's undergarments, which he believed to be heroin. A forensic chemist from the Baltimore County Crime Lab later confirmed the substance to be 47.18 grams of heroin. The State charged Mr. Johnson with six counts: (1) volume possession of heroin; (2) possession of heroin with intent to distribute; (3) simple possession of heroin; (4) attempting to elude a police officer; (5) failure to provide license to police on demand; and (6) failure to provide insurance information to another driver after an accident.

Mr. Johnson proceeded before a bench trial in the Circuit Court for Baltimore County on August 28, 2017. The circuit court found Mr. Johnson guilty of possession of heroin in violation of CR § 5-601(a)(1), volume possession of heroin in violation of CR § 5-612, and attempting to elude a police officer in violation of Md. Code (1986, 2012

3

Repl. Vol., 2017 Supp.), Transportation Article ("TR") § 21-904(c)(1). On September 27, 2017, the court merged the conviction for simple possession into the conviction for volume possession and sentenced Mr. Johnson to fourteen years' imprisonment, the first five without the possibility of parole. The court concurrently sentenced Mr. Johnson to time served for attempting to elude a police officer. Mr. Johnson appealed. In a reported opinion, the Court of Special Appeals affirmed the convictions. *Johnson v. State*, 240 Md. App. 200, 203 (2019). Mr. Johnson then petitioned this Court for a writ of certiorari to determine the maximum allowable period of imprisonment for a violation of CR § 5-612. More specifically, Mr. Johnson asked the following:

> 1. Section 5-612 of the Criminal Law Article, which prohibits possession of certain quantities of controlled dangerous substances, provides that "[a] person who is convicted of a violation of subsection (a) of this section shall be sentenced to imprisonment for not less than 5 years and is subject to a fine not exceeding $100,000." What is the maximum allowable period of incarceration for a violation of this law?

> 2. Did the circuit court impose an illegal sentence of fourteen years of incarceration for a violation of section 5-612 of the Criminal Law Article?

We granted Mr. Johnson's petition on April 22, 2019. *Johnson v. State*, 463 Md. 550 (2019).

As to the first question, informed by the legislative history of former Article 27, § 286 and the current version of CR § 5-612, we hold that the maximum allowable period of imprisonment for a violation of CR § 5-612 is twenty years. It follows, then, that the circuit court did not impose an illegal sentence when it sentenced Mr. Johnson to fourteen years' imprisonment. Accordingly, we affirm the judgment of the Court of Special Appeals.

4

**DISCUSSION**

### A.     *The Parties' Contentions.*

Mr. Johnson principally argues that the circuit court imposed an illegal sentence of fourteen years' imprisonment following his conviction under CR § 5-612. In support of this argument Mr. Johnson contends the plain language of CR § 5-612 is ambiguous for its failure to expressly state a maximum sentence and the statute's legislative history fails to resolve the ambiguity. In his view, because CR § 5-612 provides notice of only one potential term of imprisonment—the mandatory *minimum* sentence of five years' imprisonment without parole—that penalty must also be construed as the mandatory *maximum* penalty. Simply put, Mr. Johnson argues that the legislature's failure to explicitly state a maximum penalty renders CR § 5-612 ambiguous as to the maximum allowable term of imprisonment. Further, Mr. Johnson contends the legislative history fails to resolve this ambiguity; therefore, the rule of lenity must apply in his favor and the maximum legal sentence under the statute can be no more than five years' imprisonment.

The State counters that Mr. Johnson's sentence is legal. According to the State, the Legislature's omission of a maximum sentence grants a sentencing court wide discretion to impose an appropriate sentence. The State urges us to construe statutes lacking a maximum sentence provision as permitting a sentence up to life imprisonment. The crux of the State's argument is that CR § 5-612 is unambiguous. The State asserts that a plain reading of CR § 5-612 provides a sentencing "floor," and not a "ceiling." Alternatively, the State suggests the surrounding provisions in the Criminal Law Article and the Maryland Sentencing Guidelines display the clear intent of the General Assembly that the maximum

sentence is twenty years' imprisonment. Finally, the State submits that because CR § 5-612 is not vague or ambiguous, the rule of lenity does not apply.

**B.      *Statutory Interpretation.***

The interpretation of a statute is a question of law that this Court reviews *de novo*. *Brown v. State*, 454 Md. 546, 550 (2017) (citing *Bellard v. State*, 452 Md. 467, 480–81 (2017)). "This Court provides judicial deference to the policy decisions enacted into law by the General Assembly. We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quoting *Phillips v. State*, 451 Md. 180, 196 (2017)).

The statutory construction analysis begins "with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Id.* (quoting *Schreyer v. Chaplain*, 416 Md. 94, 101 (2010)). We read "the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Phillips*, 451 Md. at 196–97 (quoting *Douglas v. State*, 423 Md. 156, 178 (2011)).

"We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n*, 460 Md. 667, 685 (2018) (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010)). The plain language "must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute." *State v. Johnson*, 415 Md. 413, 421 (2010)

6

(quoting *Lockshin*, 412 Md. at 276). Our search for legislative intent contemplates "the consequences resulting from one construction rather than another." *Blaine v. Blaine*, 336 Md. 49, 69 (1994) (citing *Kaczorowski v. City of Balt.*, 309 Md. 505, 513 (1987)).

"We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Johnson*, 415 Md. at 421–22 (quoting *Lockshin*, 412 Md. at 276). When the "words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as a part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia[.]" *State v. Bey*, 452 Md. 255, 266 (2017) (quoting *Johnson*, 415 Md. at 422); *cf. Blaine*, 336 Md. at 64 ("Even where the language of a statute is plain and unambiguous, we may look elsewhere to divine legislative intent; the plain meaning rule is not rigid and does not require us to read legislative provisions in rote fashion and in isolation.") (citing *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 463 (1991)). Absent ambiguity in the text of the statute, "it is our duty to interpret the law as written and apply its plain meaning to the facts before us." *In re S.K.*, 466 Md. 31, 54 (2019).

Applying these principles, we begin with the plain language of CR § 5-612:

### § 5-612. Volume Dealer

(a) **Unlawful Amounts.** A person may not manufacture, distribute, dispense, or possess:

7

(5) 28 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

(6) 28 grams or more of any mixture containing a detectable amount, as scientifically measured using representative sampling methodology, of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

***

(c) **Enhanced Penalty.** (1) A person who is convicted of a violation of subsection (a) of this section shall be sentenced to imprisonment for not less than 5 years and is subject to a fine not exceeding $100,000.

(2) The court may not suspend any part of the mandatory minimum sentence of 5 years.

CR § 5-612 (2002) (amended 2018).[2]

Mr. Johnson's argument centers on the meaning of the phrase "[a] person . . . shall be sentenced to imprisonment for not less than 5 years." We do not discern any ambiguity from the use of the words "not less than." That phrase, as defined in Maryland case law, means "at least." *Mayor & City Council of Balt. v. Neighborhood Rentals, Inc.*, 170 Md. App. 671, 682 (2006). The General Assembly's usage of "not less than" indicates "in the words of Black's Law Dictionary 1063 (6th ed. 1990), 'the smallest or lowest degree[, at

---

[2] Captions and catchlines are generally not part of the legislation passed by the General Assembly. *Gilroy v. SVF Riva Annapolis LLC*, 234 Md. App. 104, 109 (2017). Instead, captions and catchlines are added by legal publishers after a bill becomes law. Because of this fact, captions and catchlines are not evidence of legislative intent. *See* Md. Code (1957, 2019 Repl. Vol.), General Provisions Article, § 1-208. Here, for ease of reference, we include the captions and catchlines that are provided in the recodification bill passed by General Assembly. 2002 Md. Laws, ch. 26, § 2; *see Rohrer v. Humane Soc'y of Wash. Cty.*, 454 Md. 1, 24 n.15 (2017).

the lowest estimate.]'"[3] *Neighborhood Rentals, Inc.*, 170 Md. App. at 682. To be sure, this Court also considered the phrase "not less than" in the context of an election ordinance in *Gisriel v. Ocean City Bd. of Supervisors of Elections*. 345 Md. 477 (1997). There, we equated statutory language requiring that a referendum petition contain the "signatures of not less than twenty percentum (20%) of the qualified voters," as mandating "at least" twenty percent of qualified voters' signatures. *Id.* at 481 & n.2.

Applying this interpretation to CR § 5-612, it follows that the common-sense use of the phrase "not less than" establishes a "floor" of the potential amount of incarcerable years. Contrary to Mr. Johnson's position, it would be absurd and illogical to read "not less than 5 years" to be the stated mandatory *minimum* penalty and also double as the *maximum* penalty under CR § 5-612. *Johnson*, 415 Md. at 422. Therefore, we agree with the Court of Special Appeals and the State that CR § 5-612 unambiguously provides the minimum, not the maximum, penalty for volume possession of a controlled dangerous substance.

## C.      *Development of Article 27, § 286 and CR § 5-612.*

"In addition to the plain language, the modern tendency of this Court is to continue the analysis of the statute beyond the plain meaning to examine 'extrinsic sources of

---

[3] The phrase "not less than" is not defined in the most recent edition of Black's Law Dictionary (11th ed. 2019). However, Garner's Dictionary of Legal Usage may provide insight as to the apparent exclusion of the phrase. There, an entry defines "no less:" "[t]he phrase no less, just like less, best refers to amounts or to mass nouns, not countable numbers. [ ] No fewer is the better phrase when discussing numbers of things." Garner's Dictionary of Legal Usage 606 (3rd ed. 2011). We adhere to the definition of "not less than" as it has been judicially determined by our case law. *See Neighborhood Rentals, Inc.*, 170 Md. App. at 682.

legislative intent' in order to 'check [ ] our reading of a statute's plain language' through examining 'the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.'" *In re S.K.*, 466 Md. at 50 (alteration in original) (quoting *Brown*, 454 Md. at 551). "Archival legislative history includes legislative journals, committee reports, fiscal notes, amendments accepted or rejected, the text and fate of similar measures presented in earlier sessions, testimony and comments offered to the committees that considered the bill, and debate on the floor of the two Houses [of the General Assembly] (or the Convention)." *State v. Phillips*, 457 Md. 481, 488 (2018) (citing *Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 57 (2003); *Boffen v. State*, 372 Md. 724, 736–37 (2003)).

An examination of the extensive legislative history present in this case ensures we meet our oft-stated intention: "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Johnson*, 415 Md. at 422 (quoting *Lockshin*, 412 Md. at 276). Our inquiry into the legislative history of CR § 5-612 begins with its predecessor: Article 27, § 286. Prior to the 2002 recodification of the Criminal Law Article, statutory crimes and punishments were compiled in a numbered Article designated as Article 27. In 1970, the General Assembly enacted Article 27, §§ 276 through 302 as a "comprehensive set of schedules, regulations, offenses, and penalties for . . . controlled dangerous substances." 1970 Md. Laws, ch. 403; *Oberlin v. State*, 9 Md. App. 426, 434 (1970). In pertinent part, the original

10

enactment provided as follows:

**[§]286. Offenses and Penalties:**

(a) Except as authorized by this subheading, it shall be unlawful for any person:

(1) to manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance;

\*\*\*

(b) Any person who violates any of the provisions of subsection (a) with respect to:

(1) a substance classified in Schedules I or II which is a narcotic drug shall, upon conviction, be deemed guilty of a felony and **sentenced to a term of imprisonment for not more than twenty (20) years**, and a fine of not more than twenty-five thousand dollars ($25,000) or both. Nothing in this subsection shall prevent, prohibit or make ineligible any convicted defendant from participating in the rehabilitation program under Article 43B, Sections 12 and 13, as amended from time to time, because of the length of sentence.

1970 Md. Laws, ch. 403 (emphasis added). Possession of a Schedule I narcotic drug "in sufficient quantity to reasonably indicate under all circumstances an intent to . . . distribute" is separate and distinct from Article 27, § 287, in which the General Assembly established the misdemeanor crime of simple possession. Under the Article 27, § 286 enactment, a conviction stemming from felony possession of a Schedule I or II narcotic drug carried a "term of imprisonment for not more than twenty (20) years . . . ." Article 27, § 286(b)(1)

11

(1970).[4]  This language is the first indication of the General Assembly's intent to set the maximum penalty for felony possession at twenty years' imprisonment.  *Id.*  The discussion that follows tracks this same language concerning the maximum penalty through periodic updates and amendments.  The General Assembly has amended Article 27, § 286 and CR § 5-612 twenty-seven times since its inception.[5]  Because not every amendment bears on the determination of this case, we shall discuss only those amendments affecting the development of the penalty section of CR § 5-612.

The first amendment of import affecting the penalty provision under Article 27, § 286(b)(1) occurred in 1982.  The General Assembly amended Article 27, § 286(b) to establish mandatory minimum sentences for individuals previously convicted of manufacturing or distributing a controlled dangerous substance.  *See* 1982 Md. Laws, ch. 470.  The language of the 1970 enactment remained unchanged, leaving the twenty year maximum penalty intact:

> (b) Any person who violates any of the provisions of subsection (a) with respect to:

> (1) A substance classified in Schedules I or II which is a narcotic drug is

---

[4] Mr. Johnson has limited the focus of our inquiry to the maximum allowable term of imprisonment under CR § 5-612.  For clarity, we have omitted all discussion of the potential fines enumerated under the statute.

[5] 1971 Md. Laws, ch. 493; 1973 Md. Laws, ch. 332; 1978 Md. Laws, ch. 491; 1982 Md. Laws, ch. 470; 1982 Md. Laws, ch. 770 § 4; 1984 Md. Laws, ch. 449; 1986 Md. Laws, ch. 676; 1988 Md. Laws, ch. 439; 1989 Md. Laws, ch. 5 § 1; 1989 Md. Laws, ch. 287; 1989 Md. Laws, ch. 679; 1990 Md. Laws, ch. 6 § 2; 1990 Md. Laws, ch. 347; 1991 Md. Laws, ch. 55 § 1; 1991 Md. Laws, ch. 157; 1991 Md. Laws, ch. 185; 1992 Md. Laws, ch. 328; 1993 Md. Laws, ch. 5 § 1; 1994 Md. Laws, ch. 542; 1999 Md. Laws, ch. 64; 1999 Md. Laws, ch. 500; 2001 Md. Laws, ch. 35; 2001 Md. Laws, ch. 449; 2002 Md. Laws, ch. 26 § 2; 2005 Md. Laws, ch. 482; 2016 Md. Laws, ch. 515 § 2; 2018 Md. Laws, ch. 145.

guilty of a felony and is **subject to imprisonment for not more than 20 years**, or a fine of not more than $25,000, or both.

Article 27, § 286(b)(1) (1982) (emphasis added). The 1982 amendment added the following mandatory minimum statutory language:

> Any person who has previously been convicted under this paragraph shall be sentenced to imprisonment for not less than 10 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with Article 31B, § 11.

*Id.* Therefore, effective July 1, 1982, a violation triggering Article 27, § 286(b)(1) subjected an individual to imprisonment for not more than twenty years. If that individual had a prior conviction under Article 27, § 286(b)(1), ten of those potential twenty years' imprisonment became mandatory. *Id.* Importantly, the maximum potential term of imprisonment remained unchanged.

Six years later in 1988, the General Assembly restructured the mandatory minimum scheme to more harshly penalize those individuals convicted of controlled dangerous substance crimes. The 1988 amendment removed the "not less than 10 years" provision added to Article 27, § 286 (b)(1) in 1982 and created sections (c), (d), and (e). 1988 Md. Laws, ch. 439. The amendment created increasing mandatory minimums based on the number of an offender's prior convictions:

> (c)(1) Any person who has **previously been convicted** under subsection (b)(1) or subsection (b)(2) of this section shall be sentenced, on being convicted a second time under either subsection (b)(1) or subsection (b)(2) of this section, to **imprisonment for not less than 10 years.**
>
> ***
>
> (d)(1) Any person who has **been convicted on 2 separate occasions** under subsection (b)(1) or subsection (b)(2) of this section or a combination of

13

either, where the convictions do not arise from a single incident, and who has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of § 286 or § 286A of this article, shall be sentenced, on being convicted a third time under subsection (b)(1) or subsection (b)(2) of this section or a combination of either, to imprisonment for the term allowed by law, but, in any event, **not less than 25 years.**

\*\*\*

(e)(1) Any person who has served 3 separate terms of confinement in a correctional institution as a result of **3 separate convictions** under subsection (b)(1) or subsection (b)(2) of this section or a combination of either shall be sentenced, on being convicted a fourth time under subsection (b)(1) or subsection (b)(2) of this section or a combination of either, to imprisonment for the term allowed by law, but in any event, **not less than 40 years.**

1988 Md. Laws, ch. 439 (emphasis added). Simply put, one prior conviction under Article 27, § 286(b)(1) or (b)(2) subjected the offender to a ten-year minimum sentence. Two prior convictions under Article 27, § 286(b)(1) or (b)(2) required a twenty-five year minimum sentence. Three prior convictions under Article 27, § 286(b)(1) or (b)(2) mandated a forty-year minimum sentence. Notably, the maximum penalty under Article 27, § 286(b)(1) remained the same as it did in 1970 and 1982: "imprisonment for not more than 20 years." Article 27, § 286(b)(1) (1988).

The divergence giving rise to the issue in the instant case began in 1989 when the General Assembly enacted Senate Bill 400, entitled the Drug Kingpin Act. 1989 Md. Laws, ch. 287. The Drug Kingpin Act sought to "reduce the supply of drugs in Maryland by establishing harsher penalties for dealers and by decreasing the profitability of participating in a drug trafficking crime." State of Maryland, Office of the Governor, Briefing Document and Synopsis of Drug Enforcement – The Drug Kingpin Act, Senate

14

Bill 400/House Bill 502, at 4 ("Senate Bill 400 Briefing Document"); *see also* Floor Report, House Bill 502, Law Enforcement – The Drug Kingpin Act, Senate Judicial Proceedings Committee of the Maryland Senate, 1989 Leg., 399th Sess. (Md. 1989) at 3 ("House Bill 502 Floor Report").[6]  To accomplish this major objective of the legislation, the Drug Kingpin Act established "a variety of measures specifically designed to apprehend and punish the 'higher ups' in drug distribution networks." *Allen v. State,* 89 Md. App. 25, 50 (1991) (citing Department of Legislative Reference, Session Review V– 6 (1989)).

Of import here, the Drug Kingpin Act amended Article 27, § 286 to add subsection (f), which provided penalties for the possession of controlled dangerous substances in large quantities; *i.e.*, volume possession.  This component of the Drug Kingpin Act recognized "that there need[ed] to be some distinction made between the individual who handles a substantial volume of drugs as compared to the person who handles a minimal amount." Senate Bill 400 Briefing Document at 5.  To "distinguish the volume drug dealer from the street corner dealer," the Drug Kingpin Act "establish[ed] a mandatory minimum penalty of 5 years in jail for the possession of certain threshold quantities of a controlled dangerous substance." *Id.*  The 1989 amendments to Article 27, § 286, in pertinent part, added the following:

> (f)(1) If a person violates subsection (a)(1) of this section and the violation involves any of the following controlled dangerous substances, in the amounts indicated, the person is subject to the penalties provided in

---

[6] A floor report is a document prepared by the relevant committee's staff, in this case the staff for the Senate Judicial Proceedings Committee, for the purpose of preparing the Committee Chairman who presents the second reader report on the Senate floor.

paragraph (3) of this subsection upon conviction:

\*\*\*

(III) 28 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium or any mixture containing 28 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

\*\*\*

(3)(i) A person convicted of violating paragraph (1) of this subsection is guilty of a felony and **shall be sentenced as otherwise provided for in this section**, except that it is mandatory upon the court to impose **no less than 5 years' imprisonment**, and neither that term of imprisonment nor any part of it may be suspended.

\*\*\*

1989 Md. Laws, ch. 287 (emphasis added).

Under this reorganized statute, the base penalty for a violation of Article 27, § 286(a)—*i.e.*, a first-time offender who did not possess a controlled dangerous substance in a volume amount—remained in Article 27, § 286(b). The newly added Article 27, § 286(f)(3)(i) provided only a sentencing enhancement for convictions stemming from the volume possession of a controlled dangerous substance. An individual convicted under Article 27, § 286(b) with a controlled dangerous substance in the amount indicated in Article 27, § 286(f) became subjected to the mandatory five years' imprisonment. Article 27, § 286(f)(3)(I) (1989). The maximum potential term of imprisonment, unchanged from the 1970, 1982 and 1988 enactments, remained "imprisonment for not more than 20 years." Article 27, § 286(b)(1) (1989). Under this arrangement, all aspects of a potential sentence

16

were clearly stated in Article 27, § 286.

In 1992, the General Assembly's Legislative Policy Committee established the Article 27 Revision Committee ("Article 27 Committee") to review and recommend substantive revisions to the criminal laws of Maryland. *See* Legislative Policy Committee, Defunct Units: Maryland Manual Online.[7] After the Article 27 Committee's work updated Article 27, the Code Revision Committee implemented non-substantive revisions to prepare the statute for recodification of Maryland crimes and punishments into the Criminal Law Article.[8]  *Id.*  While the Criminal Law Article was enacted in 2002, the Article 27 Committee continued to provide post-code revision and substantive recommendations before disbanding in 2008. *Id.*

The General Assembly's 2002 recodification legislation repealed Article 27 in its entirety and replaced it with the Criminal Law Article. 2002 Md. Laws, ch. 26. The stated purpose, as we noted, was to "revise, restate, and recodify the laws of the State relating to criminal law[.]"  *Id.*  Under the new statutory arrangement, CR § 5-602 established the

---

[7]  https://msa.maryland.gov/msa/mdmanual/07leg/html/com/01legpd.html, archived at https://perma.cc/S7BU-WMLK.

[8] We recently noted in *In re S.K.*, "code revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it." 466 Md. at 56 n.21 (quoting *Smith v. Wakefield, LP*, 462 Md. 713 (2019) (citing Alan M. Wilner, *Blame it all on Nero: Code Creation and Revision in Maryland* (1994))). "Maryland Code Revision began in 1970 as a long-term project to create a modern comprehensive code when Governor Marvin Mandel appointed the Commission to Revise the Annotated Code. This formal revision of the statutory law for the General Assembly was coordinated by the Department of Legislative Services. Code Revision was completed in 2016 with the enactment by the General Assembly of the Alcoholic Beverages Article." *Id.*

17

primary criminal violation:

### § 5-602. Manufacturing, Distributing, Possession with Intent to Distribute, or Dispensing Controlled Dangerous Substance.

Except as otherwise provided in this title, a person may not:

(1) Manufacture, distribute, or dispense a controlled dangerous substance; or

(2) Possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to manufacture, distribute, or dispense a controlled dangerous substance.

2002 Md. Laws, ch. 26. CR § 5-608 provided the base penalty when an individual's violation of CR § 5-602 through CR § 5-606 implicated a narcotic drug:

### § 5-608. Same – Narcotic Drug.

**(A) In General.** Except as otherwise provided in this section, a person who violates a provision of §§ 5-602 through 5-606 of this subtitle with respect to a schedule I or II narcotic drug is guilty of a felony and on conviction is **subject to imprisonment not exceeding 20 years** or a fine not exceeding $25,000 or both.

2002 Md. Laws, ch. 26 (emphasis added). CR § 5-608(b)–(d) allowed more severe penalties for second, third and fourth time offenders. CR § 5-612 completed the trifecta, articulating the penalties when a violation of CR § 5-602 implicated a narcotic drug in a volume amount:

### § 5-612. Volume Dealer.

**(A) Unlawful Amounts.** A person who violates § 5-602 of this subtitle with respect to any of the following controlled dangerous substances in the amounts indicated is **subject on conviction to a fine not exceeding $100,000 and the enhanced penalty provided in subsection (C) of this**

18

**section**:

\*\*\*

(5) 28 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

(6) Any mixture containing 28 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

\*\*\*

**(C) Enhanced Penalty.**

(1) A person who is convicted under § 5-602 of this subtitle with respect to a controlled dangerous substance in an amount indicated in subsection (A) of this section shall be **sentenced to imprisonment for not less than 5 years.**

(2) The court may not suspend any part of the mandatory minimum sentence of 5 years.

2002 Md. Laws, ch. 26 (emphasis added).

As is plainly evident from the 2002 enactment, a CR § 5-602 violation involving a Schedule I or II narcotic drug subjected an individual to "imprisonment not exceeding 20 years" under CR § 5-608. 2002 Md. Laws, ch. 26. That same violation, when a volume amount of narcotic drugs is involved, exposed an individual to the base penalty of CR § 5-608 as well as the enhanced penalties of CR § 5-612; *i.e.*, a mandatory minimum sentence of five years. The 2003 Maryland Sentencing Guidelines Manual ("MSGM") confirms as much.[9] MSGM 1.1 indicates that a violation of CR § 5-612(a) stemming from a volume

---

[9] After recodification, the Maryland State Commission on Criminal Sentencing Policy released amended versions of the MSGM with varying frequency. Relevant to our inquiry are the June 2001 MSGM (Version 1.0), January 2003 MSGM (Version 2.0), November

19

amount of Schedule I or II narcotic drug permits a maximum sentence of twenty years' imprisonment, of which five becomes mandatory. *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual*, Appx. A, p. 93 (2003) (hereafter "Maryland Sentencing Guidelines Manual").[10]

The pivotal amendment to CR § 5-612 giving rise to the current text of the statute occurred in 2005 with the enactment of Senate Bill 429. In response to recent decisions by the Supreme Court of the United States, the General Assembly amended CR § 5-612 and other provisions of the Criminal Law Article. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); Dep't Legis. Servs., *Fiscal and Policy Note, Senate Bill 429*, at 2 (2005 Session) (hereafter "Senate Bill 429 Fiscal and Policy Note"). [11] We pause to more fully explain these decisions which inspired Senate Bill 429 (2005).

In *Apprendi v. New Jersey*, the Supreme Court addressed whether the Due Process Clause of the Fourteenth Amendment required a "factual determination authorizing an increase in the maximum prison sentence for an offense . . . be made by a jury on the basis

---

2005 MSGM (Verson 3.1), November 2016 MSGM (Version 8.2) and November 2019 MSGM (Version 11.1). *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual*, June 2001 to Present, http://www.msccsp.org/Guidelines/MSGM_2001_Present.aspx, archived at https://perma.cc/LDK6-AADR.

[10]     http://www.msccsp.org/Files/Guidelines/MSGM/Version_2.0.pdf, archived at https://perma.cc/GRZ7-5X65.

[11]      http://mgaleg.maryland.gov/2005rs/fnotes/bil_0009/sb0429.pdf, archived at https://perma.cc/3Q6J-VC6W.

of proof beyond a reasonable doubt." 530 U.S. at 469. The State of New Jersey alleged that Charles Apprendi, Jr., discharged a firearm "into the home of an African-American family that had recently moved into a previously all-white neighborhood . . . ." *Id.* Upon his arrest, Apprendi admitted to law enforcement that he was the shooter. *Id.* Apprendi also made a statement, which he later retracted, "that even though he did not know the occupants of the house personally, 'because they are black in color he does not want them in the neighborhood.'" *Id.*

A grand jury indicted Apprendi on twenty-three counts of crimes in varying severity. *Id.* None of the counts referred to New Jersey's hate crime statute or alleged that Apprendi acted with a racially biased purpose. *Id.* Apprendi pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb. *Id.* at 469–70. The trial court accepted Apprendi's guilty plea and the State filed a motion to enhance the potential penalty. *Id.* at 470. The trial court then held a hearing to determine the "purpose" behind Apprendi's acts and found by a preponderance of the evidence "that the crime was motivated by racial bias" and "with a purpose to intimidate" as proscribed by the hate crime statute. *Id.* at 470–71. Accordingly, the trial court sentenced Apprendi under the applicable hate crime enhancement. *Id.* Reasoning that the Fifth and Sixth Amendment protections (as incorporated by the Due Process Clause of the Fourteenth Amendment) extend to state statutes, the Supreme Court reversed Apprendi's conviction and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

21

a reasonable doubt." *Id.* at 490.

In *Blakely v. Washington*, the Supreme Court applied the rule announced in *Apprendi*. 542 U.S. at 301. There, the State of Washington charged Blakely with first-degree kidnapping and alleged that Blakely abducted his wife from their home at knifepoint in an attempt to get her to dismiss an impending divorce suit. *Id.* at 298. Blakely entered a plea agreement wherein, in exchange for a reduction to second-degree kidnapping involving domestic violence and use of a firearm, he admitted facts relevant to support a plea to the same. *Id.* at 298–99. Under Washington law, the "standard range" of imprisonment for second-degree kidnapping spanned forty-nine to fifty-three months imprisonment. *Id.* at 299. However, a judge could impose a sentence above the standard range if "substantial and compelling reasons justifying an exceptional sentence" existed. *Id.*

At Blakely's sentencing, the trial court found that Blakely acted with "deliberate cruelty," a statutorily enumerated ground in Washington's Sentencing Reform Act permitting the court to exceed the standard range in domestic violence cases. *Id.* at 300. The trial court imposed a sentence of ninety months, thirty-seven months beyond the standard maximum. *Id.* The Supreme Court concluded that the facts supporting an extra three years above the fifty-three month statutory maximum were "neither admitted by petitioner nor found by a jury," and confirmed its holding in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

22

doubt." *Id.* at 301, 303.

Returning to the 2005 Maryland legislation, the Fiscal and Policy Note to Senate Bill 429 referenced *Apprendi* and *Blakely*, explaining that "a sentencing judge's imposition of an enhanced penalty, based on facts that were not admitted by the defendant or found by a jury, violated the defendant's right to trial by jury." Senate Bill 429 Fiscal and Policy Note at 2. Senate Bill 429 remedied this defect in the Maryland statute to be consistent with the holdings in *Blakely* and *Apprendi* by "repealing the factual penalty enhancement in the penalty provisions [of existing criminal statutes and placing] the factual circumstance that leads to the increased penalty into the factual elements of the underlying offense to be charged as its own, separate, new offense." *Id.* at 3; *see Kyler v. State*, 218 Md. App. 196, 224 (2014) (recounting legislative history of CR § 5-612 in light of *Blakely*). This amendment had the practical effect of independently cabining each section of CR § 5-601 *et seq.* so that the State, in future prosecutions, would prove each factual element of the charged crime beyond a reasonable doubt.

The 2005 amendment removed the references to CR § 5-602 from CR § 5-612. To emphasize the alterations made to CR § 5-612, language removed from the statute by the 2005 amendment is indicated in strike out, while additions are indicated in bold:

> A person ~~who violates § 5-602 of this subtitle with respect to any of the following controlled dangerous substances in the amounts indicated is subject on conviction to a fine not exceeding $100,000 and the enhanced penalty provided in subsection (C) of this section~~ **may not manufacture, distribute, dispense, or possess**:
>
> ***
>
> (5) 28 grams or more of morphine or opium or any derivative, salt, isomer,

23

or salt of an isomer of morphine or opium;

(6) Any mixture containing 28 grams or more of morphine or opium or any derivative, salt, isomer, or salt of an isomer of morphine or opium;

\*\*\*

(c)(1) A person who is convicted ~~under § 5-602 of this subtitle with respect to a controlled dangerous substance in an amount indicated in~~ **of a violation of** subsection (A) of this section shall be sentenced to imprisonment for not less than 5 years **and is subject to a fine not exceeding $100,000**.

(2) The court may not suspend any part of the mandatory minimum sentence of 5 years.

CR § 5-612(a) (2005).

In amending the statute, the General Assembly did not seek to change the penalty underlying CR § 5-612. Deleting the statutory reference to CR § 5-602 in CR § 5-612 had the unintended effect of removing CR § 5-608's stated maximum penalty of twenty years' imprisonment that CR § 5-612 previously incorporated by reference. The Fiscal and Policy Note accompanying Senate Bill 429 notes that "[t]he bill is not expected to alter eventual penalty determinations for the affected offenses." Senate Bill 429 Fiscal and Policy Note at 1. Indeed, MSGM 3.1, which incorporates the 2005 amendments, reveals no change from MSGM 1.1. MSGM 3.1 also provides that a violation of CR § 5-612(a) is punishable by up to twenty years' imprisonment, with a mandatory minimum sentence of five years. *Maryland Sentencing Guidelines Manual* at 96 (2005).[12] To be sure, both MSGM 8.2, in effect at the time Johnson violated CR § 5-612, and MSGM 11.1, the most recent version

---

[12] http://www.msccsp.org/Files/Guidelines/MSGM/Version_3.1.pdf, archived at https://perma.cc/4QWF-KZ27.

of the MSGM, provide the same guidelines: twenty years' maximum imprisonment with a mandatory minimum of five years' imprisonment. *Maryland Sentencing Guidelines Manual* at 130 (2016);[13] *Maryland Sentencing Guidelines Manual* at 137 (2019).[14] This only confirms our understanding that the General Assembly intended the maximum term of incarceration under CR § 5-612 to be twenty years' imprisonment.

In sum, the General Assembly clearly established the maximum term of imprisonment for felony possession of a Schedule I narcotic drug when Article 27, § 286 was originally enacted in 1970: "[a]ny person who violates [Article 27, § 286(a)] with respect to[ a Schedule I narcotic drug] shall, upon conviction, be deemed guilty of a felony and sentenced to a term of imprisonment for not more than twenty (20) years." Article 27, § 286(b)(1) (1970). This maximum penalty provision in the broader penalty scheme remained unchanged through several amendments to Article 27, § 286, the recodification of the Criminal Law Article, and CR § 5-612. Until 2005, CR § 5-612 indicated that the maximum penalty associated with volume possession of a Schedule I narcotic drug was twenty years' imprisonment. Senate Bill 429, a well-intentioned bill passed to conform certain criminal laws with Supreme Court decisions in *Apprendi* and *Blakely*, had the unintended effect of severing the mandatory minimum penalty in CR § 5-612 from the base penalty for possession of a narcotic drug in CR § 5-608. This statutory foible remained

---

[13]    http://www.msccsp.org/Files/Guidelines/MSGM/Version_8.2.pdf,    archived    at https://perma.cc/K78S-4EBT.

[14]    http://www.msccsp.org/Files/Guidelines/MSGM/Version_11.1.pdf,    archived    at https://perma.cc/PB9F-88LC.

unnoticed for nearly fifteen years. In light of our conclusion here, it would be prudent for the General Assembly to reconsider the wording of CR § 5-612's penalty section in future legislation.

Nonetheless, guided by the clear legislative intent, apparent since the General Assembly enacted Article 27, § 286, we hold that the maximum term of imprisonment under CR § 5-612 is, and has always been, twenty years.

### D.     *The Legality of Mr. Johnson's Sentence.*

Mr. Johnson contends that his fourteen-year sentence of imprisonment is illegal under Maryland Rule ("Md. Rule") 4-345(a). In construing the Maryland Rules, "we apply the same principles of construction employed in interpreting statutes." *Bailey v. State*, 464 Md. 685, 696 (2019) (quoting *Lee v. State*, 332 Md. 654, 658 (1993)). Under Md. Rule 4-345(a), "[t]he court may correct an illegal sentence at any time." Whether a sentence is illegal under Md. Rule 4-345(a) is a question of law reviewed *de novo*. *Bailey*, 464 Md. at 696 (citing *State v. Crawley*, 455 Md. 52, 66 (2017)). It is well settled that Rule 4-345 motions may only support claims of substantive, not procedural, illegality. *See Bailey*, 464 Md. at 696 ("Maryland Rule 4-345(a) is intended to correct sentences that are 'inherently illegal,' not just 'merely the product of procedural error.'" (citations omitted)); *Tshiwala v. State,* 424 Md. 612, 619 (2012) ("[W]here the sentence imposed is not inherently illegal, and where the matter complained of is a procedural error, the complaint does not concern an illegal sentence for purposes of Rule 4-345(a)."). Instead, an illegal sentence "is one in which the illegality 'inheres in the sentence itself; *i.e.*, there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for

26

the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful.'" *Colvin v. State*, 450 Md. 718, 725 (2016) (quoting *Chaney v. State*, 397 Md. 460, 466 (2007)).

Given our interpretation of CR § 5-612 that the maximum term of imprisonment is twenty years, it is clear that Mr. Johnson's sentence is not illegal. The circuit court's sentence appropriately penalized Mr. Johnson as an individual convicted of volume possession of heroin. Indeed, Mr. Johnson's fourteen-year sentence, the first five without the possibility of parole, falls squarely within the range intended by the General Assembly: five to twenty years' imprisonment.

## E.    *The Rule of Lenity.*

Mr. Johnson urges us to apply the rule of lenity in his favor. We decline to do so. "Where a statute is ambiguous, and where the means of statutory interpretation fail to resolve the ambiguity, the rule of lenity compels a court to resolve the ambiguity in the defendant's favor." *Nichols v. State*, 461 Md. 572, 602 (2018). As this Court recently explained:

> The "rule of lenity" is not a rule in the usual sense, but an aid for dealing with ambiguity in a criminal statute. Under the rule of lenity, a court [that is] confronted with an otherwise unresolvable ambiguity in a criminal statute that allows for two possible interpretations of the statute will opt for the construction that favors the defendant. For a court [that is] construing a statute, the rule of lenity is not a means for determining—or defeating— legislative intent. Rather, it is a tie-goes-to-the-runner device that the court may turn to when it despairs of fathoming how the General Assembly intended that the statute be applied in the particular circumstances. It is a tool of last resort, to be rarely deployed and applied only when all other tools of statutory construction fail to resolve an ambiguity. This follows from the fact that our goal in construing statutes is always to ascertain and carry out the legislative purpose of the statute and not to seek out an interpretation that

27

necessarily favors one party or the other.

*Id.* (alterations in original) (quoting *Oglesby v. State*, 441 Md. 673, 681 (2015)).

The rule of lenity "only informs our interpretation of a criminal statute when the standard tools of statutory interpretation fail to discern the intent of the Legislature." *Gardner v. State*, 420 Md. 1, 17 (2011). Lenity "provides a mechanism for resolving ambiguity when legislative intent cannot be determined to any degree of certainty." *Id.* Because we have determined the legislative intent of CR § 5-612, and find the statutory language unambiguous, the rule of lenity does not apply here.

## CONCLUSION

We hold that the maximum allowable period of imprisonment for volume possession of a controlled dangerous substance under CR § 5-612 is twenty years' imprisonment. Mr. Johnson's fourteen-year sentence, the first five without the possibility of parole, is legal because it falls within the permissible range of years for which an individual may be sentenced; *i.e.*, five to twenty years' imprisonment. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore County
Case No. 03-K-17-001060
Argued: September 10, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2019

_____

DANA T. JOHNSON, JR.

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Concurring Opinion by Booth, J.

_____

Filed: February 28, 2020

Most respectfully, I concur with the Majority opinion that Criminal Law Article (2002, 2012 Repl. Vol., 2018 Cum. Supp.) ("CR"), § 5-612 is unambiguous and provides the minimum, not a maximum, penalty of five years' imprisonment for volume possession of a controlled dangerous substance. Majority slip op. at 9. I also agree that, based upon the legislative history, it *appears* that the General Assembly's 2005 amendments to CR § 5-612 had the *unintended* effect of removing the maximum penalty of twenty years' imprisonment from the offense.

I part ways with the Majority's holding that supplies a maximum penalty of twenty years for this statutory offense. The statute is unambiguous. It states a minimum penalty, but no maximum. Where a statute is unambiguous, "[w]e will not 'divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature.'" *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 75–76 (2004) (internal citations omitted). Respectfully, it is not the Court's role to supply what it believes to be a missing term from the statute. If, through the amendments to the statute, the Legislature inadvertently removed the maximum penalty from the statute, then the Legislature should correct the statute—not the Court.

I agree with the Court of Special Appeals' analysis that Mr. Johnson's sentence is not unconstitutionally vague, nor is it excessive under the Eighth Amendment to the Constitution. *Johnson v. State*, 240 Md. App. 200, 209–10 (2019). Under the plain language of CR § 5-612, "Mr. Johnson was on notice that it was illegal to possess the large quantity of heroin he had on his person. He was also on notice that the violation of the

statute would result in an automatic *minimum* penalty of five years' imprisonment . . . ." *Id.* at 210 (emphasis in original). I do not find that the Legislature's failure to provide a maximum penalty constituted a violation of Mr. Johnson's due process rights. I would hold that the circuit court properly exercised its discretion when it sentenced Mr. Johnson to fourteen years' imprisonment.

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2019

_____

DANA T. JOHNSON, JR.

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Dissenting Opinion by Watts, J.

_____

Filed: February 28, 2020

Respectfully, I dissent. I disagree with the majority opinion's holding that Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2016 Supp.) ("CR") § 5-612(c) is unambiguous as to the mandatory minimum penalty of five years without parole but that the legislative history of CR § 5-612(c) informs that the maximum sentence for the offense is twenty years of imprisonment. See Maj. Slip Op. at 1-2, 28. I would hold that, based on the plain language of CR § 5-612(c), its legislative history, and due process concerns, five years of imprisonment without the possibility of parole is the sole sentence for possession of a controlled dangerous substance under CR § 5-612, and I would reverse the judgment of the Court of Special Appeals.

In reaching the conclusion that CR § 5-612 provides for a maximum sentence of twenty years of imprisonment—a sentence that is not provided for by the plain language of CR § 5-612, and resorting to an examination of legislative history to determine the maximum sentence, see Maj. Slip Op. at 28—the majority opinion defies the tenets of statutory construction. It is well-settled that, where a statute is unambiguous on its face, *i.e.*, the statute's plain language is unambiguous, consulting legislative history is unnecessary. See Agnew v. State, 461 Md. 672, 679, 197 A.3d 27, 31 (2018). Here, the majority opinion oddly concludes that CR § 5-612, which contains no mention of a maximum sentence, "unambiguously provides the minimum, not the maximum, penalty for volume possession of a controlled dangerous substance[,]" Maj. Slip Op. at 9, and tours the legislative history of CR § 5-612 to pronounce that a twenty-year maximum sentence set forth in a separate statute is the maximum sentence for the offense under CR § 5-612, see id. at 10-26. Although well-intentioned and well-written, the majority opinion's exposé

of the legislative history of CR § 5-612 does not lead to the conclusion that CR § 5-612 has a maximum sentence of twenty years of imprisonment.

In most instances, where a statute criminalizes certain conduct, the statute sets forth a maximum sentence for that crime. Some criminal statutes set forth not only a maximum sentence but also a mandatory minimum sentence. For example, under three firearm-related criminal statutes, where the defendant has no relevant prior convictions, the trial court must impose a sentence of "imprisonment for not less than 5 years and not exceeding 20 years." CR §§ 4-204(c)(1)(i), 4-306(b)(2)(i), 5-621(c)(1)(i).

CR § 5-612, by its plain language, sets forth a mandatory minimum sentence, but does not include a maximum sentence. CR § 5-612(c), the penalty provision, states in pertinent part:

> (1) A person who is convicted of a violation of subsection (a) of this section shall be sentenced to imprisonment for not less than 5 years and is subject to a fine not exceeding $100,000.

> (2) The court may not suspend any part of the mandatory minimum sentence of 5 years.

A reading of the plain language of CR § 5-612(c) demonstrates that a five-year mandatory minimum sentence without the possibility of parole is the only authorized sentence. Based on CR § 5-612's plain language, no further inquiry is necessary. CR § 5-612 does not authorize a sentence other than five years of imprisonment without the possibility of parole, and the sentence that the circuit court imposed in this case exceeds the authorized sentence.

In addition to the absence of a maximum sentence in CR § 5-612's plain language,

CR § 5-612's legislative history shows that five years of imprisonment without the possibility of parole is the sole sentence for possession of a controlled dangerous substance under CR § 5-612. It is obvious that the General Assembly knows how to set forth a maximum sentence in a criminal statute. The circumstance that the General Assembly did not do so with CR § 5-612 is evidence that the only sentence that CR § 5-612 includes—namely, the five-year mandatory minimum sentence—is the sole sentence, *i.e.*, the mandatory minimum sentence as well as the maximum sentence, authorized by CR § 5-612.

In this case, an examination of legislative history reveals that the General Assembly did not provide a maximum sentence in CR § 5-612. Before 2005, as the majority opinion notes, Md. Code Ann., Crim. Law (2002) ("CR (2002)") § 5-612 did not set forth a standalone crime, and instead acted as an enhanced penalty provision that applied to possession of a controlled dangerous substance with the intent to distribute under CR (2002) § 5-602. See Maj. Slip Op. at 23-24; 2002 (Reg. Sess.) Md. Laws 435-36 (Vol. I, Ch. 26, H.B. 11). In other words, before 2005, a defendant could not be found guilty of violating CR (2002) § 5-612. See 2002 (Reg. Sess.) Md. Laws 435-36. Instead, a defendant who was found guilty of possession of a controlled dangerous substance with the intent to distribute under CR (2002) § 5-602 was subject to the five-year mandatory minimum sentence under CR (2002) § 5-612 where the defendant possessed a specified amount of the controlled dangerous substance—for example, "50 pounds or more of marijuana[.]" Id. at 435.

In Blakely v. Washington, 542 U.S. 296, 301, 303 (2004), the Supreme Court held

- 3 -

that a trial court may not impose an enhanced penalty based on facts, "[o]ther than the fact of a prior conviction[,]" that were neither "reflected in the jury['s] verdict [n]or admitted by the defendant." (Cleaned up). Blakely posed a problem for CR (2002) § 5-612 because, where a defendant was found guilty of possession of a controlled dangerous substance with the intent to distribute under CR (2002) § 5-602, CR (2002) § 5-612 allowed a trial court to impose an enhanced penalty based on a fact, other than the fact of a prior conviction, that was neither reflected in the jury's verdict nor admitted by the defendant—namely, the amount of the controlled dangerous substance involved.

The year after the Supreme Court decided Blakely, in response to that decision, the General Assembly passed Senate Bill 429 (2005 Reg. Sess.). See 2005 (Reg. Sess.) Md. Laws 2827 (Vol. IV, Ch. 482, S.B. 429); S.B. 429 (2005 Reg. Sess.) Fiscal and Policy Note at 3, available at http://mgaleg.maryland.gov/2005rs/fnotes/bil_0009/sb0429.pdf [https:// perma.cc/S3RR-ACDX]. According to the Senate Bill's Fiscal and Policy Note, the Committee to Revise Article 27 "believe[d] that [Blakely] require[d] a legislative response in order to maintain the constitutionality of certain provisions of Maryland's criminal code." Id. at 2. The Committee cautioned that Maryland had "a handful of statutory crimes that provide[d] for enhanced penalties based on the existence of certain facts beyond the elements of the underlying crime." Id. at 3. The Committee recommended "correct[ing] this apparent defect under *Blakely* . . . by repealing the factual penalty enhancement in the penalty provisions[,] and [] plac[ing] the factual circumstance that leads to the increased penalty into the factual elements of the underlying offense to be charged as its own, separate, new offense." Id. Through the General Assembly's passage of Senate Bill 429

(2005 Reg. Sess.), CR (2002) § 5-612—the enhanced penalty provision that applied to possession of a controlled dangerous substance with the intent to distribute under CR (2002) § 5-602—became the new CR § 5-612, which set forth the standalone crime of volume possession of a controlled dangerous substance under CR § 5-612. See 2005 (Reg. Sess.) Md. Laws 2832-33.

To summarize, the General Assembly amended CR (2002) § 5-612 to create a new, standalone crime, and refrained from adding a provision that would have expressly set forth a maximum sentence. Instead, the General Assembly included the five-year mandatory minimum sentence as the only sentence to which CR § 5-612 referred. These circumstances indicate that the General Assembly either intentionally or inadvertently refrained from adding a provision that would have expressly set forth a maximum sentence, and that the five-year mandatory minimum sentence is the sole permissible sentence.

The majority opinion's determination that the maximum sentences are those that CR § 5-608 sets forth[1] is wrong. See Maj. Slip Op. at 24. The majority opinion concludes that, under CR § 5-608, where the defendant has no relevant prior convictions, twenty years of imprisonment is the maximum sentence for volume possession of heroin under CR § 5-612. See id. The majority opinion's determination fails because, by their express terms, CR §§ 5-607 through 5-609 do not apply to volume possession of controlled dangerous substances under CR § 5-612. CR §§ 5-607, 5-608, and 5-609 state that they apply to "a

---

[1]CR §§ 5-607 through 5-609 set forth multiple maximum sentences for certain drug offenses. The maximum sentence that applies in a particular case depends on the controlled dangerous substance at issue and what, if any, relevant prior convictions the defendant has.

person who violates a provision of [CR] §§ 5-602 through 5-606[,]" and CR § 5-608.1 states that it applies to a person who "knowingly violate[s CR] § 5-602[.]" No provision in CR §§ 5-607 through 5-609 mentions CR § 5-612, much less indicates that the maximum sentences that are set forth in CR §§ 5-607 through 5-609 apply to volume possession of controlled dangerous substances under CR § 5-612. Additionally, nothing in CR § 5-612 indicates that the statute's maximum sentence is set forth in CR §§ 5-607 through 5-609.

Independent of the General Assembly's intent, the principles of due process require notice to a defendant regarding the maximum sentence for an offense. Due process concerns dictate that five years of imprisonment without the possibility of parole is the maximum sentence for volume possession of a controlled dangerous substance under CR § 5-612. Under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, "to give ordinary people fair notice[,] . . . statutes fixing sentences must specify the range of available sentences with sufficient clarity[.]" Beckles v. United States, ___ U.S. ___, 137 S. Ct. 886, 892 (2017) (cleaned up). "[C]riminal statutes must be sufficiently clear and definite to inform a person of ordinary intelligence what conduct is punishable and what the penalty for such conduct might be before the criminal conduct is committed." Evans v. State, 420 Md. 391, 398, 23 A.3d 223, 226 (2011) (cleaned up). "Fundamental fairness dictates that the defendant understand clearly what debt he [or she] must pay to society for his [or her] transgressions. If there is doubt as to the penalty, then the law directs that [the] punishment must be construed to favor a milder penalty over a harsher one." Robinson v. Lee, 317 Md. 371, 379-80, 564 A.2d 395, 399 (1989) (citations omitted).

The plain language of CR § 5-612 would not make the possibility of a sentence greater than five years of imprisonment without the possibility of parole known to a defendant. Nothing in CR § 5-612 indicates that a trial court may go beyond the five-year mandatory minimum sentence—much less that a trial court may impose a sentence of fourteen years of imprisonment, as Johnson received. Indeed, given that most criminal statutes set forth maximum sentences, defendants and their attorneys would likely interpret the absence of a maximum sentence in CR § 5-612 to mean that the sentence that CR § 5-612 sets forth—*i.e.*, the five-year mandatory minimum sentence—is the sole sentence.

Also, the language of the indictment in this case is telling. The indictment addressed the possible sentence for volume possession of heroin under CR § 5-612, in pertinent part, as follows: "If [you are] convicted, a minimum mandatory sentence of 5 years must be imposed. . . . No maximum jail time is specified in the statute." The literal interpretation of this language is that there is no maximum sentence of imprisonment, and that the defendant faces only a mandatory minimum sentence of five years of imprisonment without the possibility of parole. At a minimum, a defendant might wonder whether any maximum sentence would be applicable at all—and that is precisely the problem, as CR § 5-612 provides no notice of any applicable maximum sentence.

The Majority's holding that twenty years of imprisonment is the maximum sentence for first-time volume possession of heroin under CR § 5-612, see Maj. Slip Op. at 24, will cause serious problems for every defendant who, like Johnson, is charged with that crime. Nothing in CR § 5-612 and, in this case, the indictment, would make clear to a defendant that a trial court could impose a sentence that exceeds five years of imprisonment without

the possibility of parole. A criminal defense attorney or defendant is unlikely to research Maryland case law to search for a missing maximum sentence. The lack of notice will prejudice a defendant who is facing critical decisions concerning plea negotiations, *i.e.*, whether to accept a particular plea offer from a prosecutor or proceed to trial. The absence of a reference to a maximum sentence in CR § 5-612 and the indictment makes plain that Johnson elected a bench trial without knowing in advance that, if convicted, he could be sentenced to fourteen years of imprisonment. This is not a result contemplated by the plain language of CR § 5-612 or its legislative history.

For the above reasons, respectfully, I dissent.