# WASHINGTON, BALTIMORE AND ANNAPOLIS RAILWAY COMPANY

*vs.*

# WILLIAM A. FINGLES, Inc.

*Electric Street Car—Negligence of Motorman—Evidence—
Speed of Car—Injury to Automobile—
Measure of Damages.*

Witnesses of an accident resulting from a collision with an electric car are competent to testify as to the speed of the car.

p. 579

In an action for damage to plaintiff's touring car, conceding that the jury should have been instructed that plaintiff was entitled to recover, in addition to the reasonable cost of repairing the car, the reasonable rental value of the car during his deprivation of its use, rather than what it cost plaintiff to hire another car while so deprived, the fact that the jury received the latter rather than the former instruction, and that evidence of what such hiring cost plaintiff was admitted, is not ground for reversal on defendant's appeal, it appearing that the car hired was a cheaper type of car than that injured, and that the rent paid therefor was "very reasonable."

pp. 580, 581

Plaintiff's automobile having been injured by the impact of one B.'s truck, alleged to have been pushed against it by defendant railway company's electric car, the company cannot complain that the court, at B.'s request, withdrew the case from the jury as to him.

p. 581

There being evidence that the street railway track was clear, and that defendant's motorman had an unobstructed view of the point where the collision occurred, and that at the time the truck which was hit by defendant's car "pulled out" from its position by the curb, defendant's car was seventy-five or eighty feet away, it was proper to refuse to take the case from the jury, even though defendant's car was not moving at an excessive speed, it being the duty of motorman, in a crowded city street, to be on

the watch for persons and vehicles approaching the track, and
to keep the car under control for the purpose of avoiding injury
to such persons and vehicles.                               pp. 581-583

*Decided January 14th, 1920.*

Appeal from the Court of Common Pleas of Baltimore
City (STANTON, J.).

Of the prayers referred to in the opinion, defendant's first
prayer asked an instruction that there was no evidence suffi-
cient to entitle plaintiff to recover against defendant rail-
road company, while defendant's tenth, as well as his third,
fourth and eleventh prayers, were concerned with the ques-
tion of the negligence of the driver of the truck belonging to
defendant Bransby.

The cause was argued before BOYD, C. J., BURKE, THOMAS,
PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*L. Vernon Miller,* with whom were *Marbury, Gosnell &
Williams* on the brief, for the appellant.

*William Edgar Byrd,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The declaration in this case alleged that on or about the
first of May, 1918, a Franklin five-passenger touring car be-
longing to the plaintiff was standing in front of the plaintiff's
place of business at No. 34 South Liberty street, in the City
of Baltimore, and was struck by an automobile truck of the
defendant, Charles E. Bransby, by reason of a collision be-
tween said truck and a passenger car of the defendant, the
Washington, Baltimore and Annapolis Electric Railway Com-

pany, which collision was due to the negligent operation by said defendants, their servants and agents, of said truck and said passenger car, and that by reason thereof the plaintiff's automobile was materially damaged and the plaintiff was deprived of the use thereof in its business "and will be deprived of such use for a considerable length of time while the same is being overhauled and repaired"; that said accident was caused by the negligence of the defendants, without any negligence or want of care on the part of the plaintiff directly contributing thereto, wherefore the plaintiff claimed twenty-five hundred dollars damages. The defendants pleaded the general issue plea, and the trial of the case resulted in a judgment in favor of the defendant, Charles E. Bransby, and a judgment in favor of the plaintiff against the Railway Company for $733.33, with interest, and costs of suit, from which last mentioned judgment the Railway Company has appealed.

The record contains seven exceptions to the rulings of the lower Court on the evidence, one to the granting, at the close of the plaintiff's testimony, of a prayer withdrawing the case from the jury as to the defendant, Charles E. Bransby, and one to the ruling of the Court on the prayers at the conclusion of the testimony.

The plaintiff, William A. Fingles, Inc., offered evidence tending to show that it had its place of business at No. 34 South Liberty street; that the frontage of said property was about 32 feet; that at the time of the accident, on the first of May, 1918, the touring car of the plaintiff was standing in front of the plaintiff's place of business, about ten feet from the northern line of the building, up against the curb line and "facing south"; that a Packard truck belonging to the plaintiff was standing about eight or ten feet in front of the touring car; that the frontage of the property adjoining and north of plaintiff's property was about thirty-two feet, and the frontage of Hanline's, the next property to the north, was about twenty-eight feet, and that standing in front of

W., B. & A. RWY. CO. vs. FINGLES.     577

Md.]                    Opinion of the Court.

Hanline's, with the front part of it at the southern line of
that property, was the Ford barrel truck of the defendant,
Charles E. Bransby, which was loaded with barrels.  George
E. Stroebel, a witness for the plaintiff, after giving the loca-
tion of the several vehicles as stated above, testified that he
came out of a lunch room at No. 24 South Liberty street,
and stopped in front of the lunch room, near the curb, to talk
with William A. Fingles, Jr., who had just come up Liberty
street, and that while standing there, about a hundred and
twenty-eight feet from plaintiff's property, and about seventy-
five or eighty feet from the barrel truck, looking in a south-
erly direction, he saw the barrel truck start to pull out "in
a southerly direction to get clear * * * and go down Liberty
street," and that at the same time he noticed two cars of the
Railway Company, "coupled together," coming down Lib-
erty street at the rate of about fifteen miles an hour; that at
the time he first noticed the railway car and saw the barrel
truck turning out the front of the railway car was just oppo-
site him; that he did not hear any signal given by the motor-
man of the car; that the car struck the barrel truck and car-
ried it down the street, dragged it into the touring car of the
plaintiff, and then dragged the barrel truck and the touring
car until the front of the touring car struck the Packard
truck of the plaintiff, "and then they stopped"; that the
barrel truck at the time it was struck by the railway car was
about forty-five or fifty feet from plaintiff's touring car, and
that the railway car pushed the barrel truck the distance of
forty-five feet "into" the plaintiff's touring car, and then
pushed both the barrel truck and the touring car a distance
of eight or ten feet until the latter struck the Packard truck;
that the distance between the curb and the nearest rail of the
railway track was about eight or ten feet; that he did not see
the driver of the barrel truck give any signal when he pulled
out from the curb, and he did not hear any signal given by
the motorman of the electric car; that when he first noticed

the barrel truck and the electric car, the truck was pulling out into the street and the front of the electric car was opposite the witness, who was standing about seventy-five or eighty feet from the barrel truck. There was also evidence tending to show that the collision occurred about two o'clock in the afternoon; that at that hour of the day Liberty street, at the place of the accident, is usually a crowded thoroughfare and much used by trucks and other vehicles; that at the time of the accident the weather was clear, the street and car tracks were dry, and there was a clear track and nothing between the electric car and barrel truck to obstruct the view of the motorman; that the touring car of the plaintiff was used in its business, and was damaged to the extent of five hundred dollars, the amount plaintiff paid the Franklin Motor Car Company for repairing it; that while the touring car was being repaired, the plaintiff had to hire another car to use in its business; that it hired for that purpose a runabout from the Franklin Motor Car Company, for which it paid seventy dollars per month, and that seventy dollars per month was a very reasonable rate.

The defendant offered evidence tending to show that the speed at which the electric car was running just before it collided with the barrel truck was about eight or ten miles an hour; that when running at that rate the car could be stopped within thirty or forty feet; that the intersecting street above the point of the accident is Redwood street, and that the motorman of the electric car rang his bell after he crossed Redwood street; that as the electric car approached the place where the barrel truck was standing the driver of the truck, without giving any warning, "pulled out * * * in front of the train" or "shot out from the curb," and the motorman of the electric car immediately threw on his emergency brake, and the car struck the barrel truck behind the front wheels of the truck; that when the barrel truck left the curb the electric car was "ten feet away," and that it would have been impossible for the motorman to have stopped the

car "after he saw the truck leaving the curb." The defendant also offered in evidence an ordinance of Baltimore City requiring the driver or person in charge of a vehicle, "before turning the corner of any street or turning out or starting from or stopping at the curb of any street," to "first see that there is sufficient space free from other vehicles, so that such turn, stop or start may be safely made," and to "then give a plainly visible or audible signal."

The fourth exception was not pressed in this Court, and we see no objection to the evidence referred to in the first and second exceptions. The witnesses saw the accident, and were therefore competent to testify to the speed of the electric car. We said in *United Rys. Co.* v. *Ward,* 113 Md. 649, "It is the uniform practice to allow those who witness an accident of the character of the one we are considering to testify to the speed of the train or car, and to permit those who are familiar with it to describe the place of the accident."

The third exception is to the admission of evidence to show what it cost the plaintiff to have the touring car repaired in order to restore it to the condition it was in before the accident, and the fifth, sixth and seventh exceptions are to evidence of what it cost the plaintiff to hire another car to use in its business while its car was being repaired. There was evidence tending to show the extent to which the plaintiff's car was damaged, and that the cost of repairing it, paid by the plaintiff, was reasonable; that the car was used in plaintiff's business; that it was necessary for the proper conduct of the business for the plaintiff to hire another car for use in its business while its car was being repaired; that plaintiff's car was a Franklin touring car, while the car it hired was a Franklin runabout, and that the price the plaintiff paid for the use of the runabout was very reasonable. It is said in 17 *Corpus Juris,* p. 877, that the measure of damages for injury to personal property, which has not been entirely destroyed, according to some authorities, "is the cost

of repairing (the property) together with the value of the
use of the property during the time it would take to repair
it." In the case of *Consol. Gas Co.* v. *Getty,* 96 Md. 683,
the Court held that the proper measure of damages in that
case was the fair and reasonable cost of restoring the house to
its condition "as it stood before the explosion." The same
rule is recognized in *Piedmont Coal Co.* v. *Kearney,* 114
Md. 496, and *Mullan* v. *Belbin,* 130 Md. 313. In the case
of *Wood* v. *State, use of White,* 66 Md. 61, the suit was on
an injunction bond, and the question was the proper measure
of damages for enjoining the removal of plaintiff's saw mill
from defendants' land. The Court said: "The defendants'
question in their fifth exception, 'What is the fair hire for
such a machine as this is?' should have been allowed. The
rental value or hire of a saw mill with a known capacity is
not difficult of ascertainment. Equivalent words to 'rental
value' or 'hire' as applied to a saw mill would be 'the value
of the use of the same.' Such an inquiry furnishes a more
trustworthy and definite guide to ascertain the loss sus-
tained by its enforced idleness than a conjectural estimate
of the net results of reducing to lumber an unfelled forest."
See also *Abbott* v. *Gatch,* 13 Md. 314, and *Cent. Trust Co.*
v. *Arctic Ice Mach. Co.,* 77 Md. 202. Practically the same
question is presented by the objection to plaintiff's second
prayer, which contained the instruction: "If the jury find
their verdict for the plaintiff, they shall award the plaintiff
as damages, such sum as they shall find from the evidence
represented the reasonable cost to repair the damage to the
automobile of the plaintiff caused by said accident, together
with such sum as the jury shall find from the evidence repre-
sented the cost to the plaintiff for the automobile used by it
in its business (if the jury so find) during such reasonable
period as the jury may find from the evidence the plaintiff
was deprived of the use of its automobile by reason of said
accident." In discussing this prayer, counsel for the appel-
lant make no objection to the first part of the prayer relating

to the cost of repairing the plaintiff's automobile, but they objected to that part of the prayer relating to the cost of the automobile hired by the plaintiff, and insist, as stated in their brief, that the "measure of damages in such a case as this is * * * not what it *cost* the plaintiff to hire another car, but its *reasonable rental value,* or the *value of the use* of the damaged car during such reasonable time as the owner is deprived of its use." Assuming that, under the authorities referred to, the appellant's criticism of the evidence relating to what it cost the plaintiff to hire the machine, and of the form of this prayer, is a proper one, it is apparent that there was no serious error in the rulings objected to. If there had been evidence that the automobile hired by the plaintiff was more valuable than the car that was damaged, or that the rental value of the hired car was greater than the rental value of the damaged car, or that the *rate* paid by plaintiff for the use of the hired car was unreasonable or excessive, there would have been more ground for complaint. But the evidence shows that the damaged car was a Franklin *touring car,* while the hired car was a Franklin *runabout,* and the only evidence reflecting upon the rental value of either car is the evidence tending to show that the *rate* paid by plaintiff for the use of the hired car was "very reasonable." The length of time during which the plaintiff was entitled to recover for the cost of the hired car was properly stated in the prayer, and we do not see how the defendant could have been injured, in this case, by the rulings referred to.

The appellant cannot complain of the granting of the prayer of the defendant, Bransby, withdrawing the case from the jury as to him, which is the subject of the eighth exception, and the exception was not pressed in this Court.

The ninth and remaining exception is to the ruling of the Court below on the prayers offered at the conclusion of the testimony. The objections urged to this ruling are to the granting of plaintiff's second prayer, which we have already disposed of, and to the rejection of the defendant's first and

tenth prayers. In view of the evidence to which we have
already referred the defendant's first prayer was properly
rejected. The appellant insists that the "only possible theory
upon which the case could have gotten to the jury is that the
motorman was going at an excessive rate of speed," and that
assuming that the electric car was moving at the rate of fif-
teen miles an hour, as stated by the witness Stroebel, that was
not *per se* negligence. But this contention overlooks the
further evidence tending to show that the track was clear,
that the motorman of the electric car had an unobstructed
view of the point where the accident occurred, and that at
the time the driver of the barrel truck left or pulled out from
the curb and across the track of the appellent the appellant's
car was seventy-five or eighty feet away. In the case of
*Balto. City Pass. Co.* v. *McDonnell,* 43 Md. 552, 553, the
Court said: "It was contended by counsel for the defendant
that, if the driver saw that the railroad track was clear and
no one upon it, he had performed all that ordinary care and
prudence required of him, and it was not for him to suppose
that anyone would put himself in the way of the car, by at-
tempting to cross in front of him. In a large and populous
city, where all descriptions of vehicles are constantly passing
and repassing, as well as persons on foot, including the aged
and infirm, and also children who are young and wanting in
prudence and discretion, it is the duty of drivers of cars not
only to see that the railroad track is clear, but also to exer-
cise a constant watchfulness for persons who may be ap-
proaching the track. Unless he does so he does not exercise
that ordinary care and prudence, which the law imposes
upon him." In the case of *United Rys. Co.* v. *Kolken,* 114
Md. p. 171, the Court, after quoting from *Neubeur's Case,*
62 Md. 401, said: "But, as was distinctly recognized in that
case, a very different rule applies to the running of cars on
the crowded thoroughfares of a city, where the motorman is
*required to anticipate* the conduct of those crossing the streets
to the extent of keeping a sharp lookout, giving proper warn-

ing and reducing the speed of his car so as to have it under control for the purpose of avoiding injury to those who may be on the crossing." These cases show the degree of care required of motormen operating cars on the crowded thorough-fares of a large city, and it is clear that there was evidence in this case from which the jury could have found that the motorman of the appellant's car did not exercise the care required of him by these cases, and others that might be cited in support of the rule, and that if he had done so he would have seen the barrel truck in time to have checked the speed of or stopped his car and avoided the accident. It is true, the defendant offered evidence tending to show that the electric car was only ten feet away when the barrel truck started across its tracks, but the relative weight of the evidence on that point was a matter for the jury and not for the Court.

The defendant's tenth prayer is fully covered by the granted prayers of the defendant, and particularly by defendant's third, fourth and eleventh prayers.

Finding no reversible error in any of the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*